# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BARBARA A. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-09-0093-HE |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND MEMORANDUM DECISION

This case arises out of an accident which occurred during the afternoon of May 8, 2007. Plaintiff parked her car in front of the U. S. Post Office in Tecumseh, Oklahoma, intending to buy stamps while there. Under circumstances discussed more fully below, she tripped and fell, causing various injuries to herself. Plaintiff submitted an administrative claim under the Federal Tort Claims Act ("FTCA"), for $20,000, to the U.S. Postal Service in June 2008. That claim was denied in August 2008, and this suit was filed in January 2009. Generally, a plaintiff's recovery in a civil suit under the FTCA is capped by the amount requested in her original administrative claim. However, in December 2009, plaintiff sought leave to increase her claimed amount to include expenses related to a total elbow replacement surgery which she stated she was not aware of the need for until after filing her claim. The court permitted the amendment, concluding that the increase was justified under 28 U.S.C. § 2875(b) in light of newly discovered evidence of damages. Order, Feb. 25, 2010 [Doc. No. 36]. Following denial of defendant's summary judgment motion, the case proceeded to trial before the court on April 15, 2010. This order sets out the court's findings and conclusions.

The evidence was undisputed as to the physical layout of the post office premises. To

access the post office from the parking spots in the street in front, a customer must negotiate three steps. The first step — actually the curb — lined the public street on which plaintiff parked. A second step was two feet six inches away, across the walkway. The third step was six feet eight inches beyond the second step. The evidence established that the second step had exposed rebar (reinforcing metal) along a portion of the concrete edge of the second step. The top or third step — that nearest the post office — had a safety hand-railing and yellow painted areas to designate the step. The underlying factual dispute essentially boiled down to whether the accident was due to plaintiff tripping over the second or third steps. If it was the third step, defendant is not liable as the parties concede there was no basis for objection to defendant's maintenance of that step. If it was the second step, with the exposed rebar, then plaintiff potentially has a basis for claim.

Virtually all of the evidence as to the specifics of the accident is circumstantial. Plaintiff lacks a clear recollection of most of the details after she got out of her car and there were no other witnesses. Plaintiff has some recollection of tripping on the curb and touching something with her foot as she fell forward, but does not recall other details. The evidence at trial included conflicting second-hand accounts of what plaintiff said at the time to others as to how the accident occurred.[1]

---

[1]*The postmaster's testimony and report and the notes from the rescue personnel, ambulance personnel and emergency room indicate, variously, that plaintiff "missed her step on the curb and fell," that she tripped "while climbing the stairs at the post office," that she "slipped and fell on the pavement" or that she fell while "stepping down from the first step in front of the post office" or when she "attempted to get into her car." The court attaches little significance to these differing descriptions, as these are all second-hand descriptions of what plaintiff is alleged to have said, reported by persons who had no reason at the time to be concerned with the specifics of the*

It is substantially undisputed that, however she may have gotten there, plaintiff ended up laying on the ground above the third step, with her head generally toward the post office and her feet extending several inches below that step. She experienced various injuries to her face and her right side.

Defendant offered expert testimony from Thomas Ashing, an accident reconstructionist. He opined generally that it was impossible, or at least highly improbable, that plaintiff could have tripped on the second step and ended up where she did. He suggested she had in fact tripped on the top or third step. Plaintiff sought to exclude Mr. Ashing's testimony on <u>Daubert</u> grounds.[2] As plaintiff's <u>Daubert</u> objection was not asserted until trial, long after the deadline set for <u>Daubert</u> motions in the court's scheduling order, the court declines to exclude Mr. Ashing's testimony on those grounds.[3] However, as the court is the trier of fact in these circumstances, a determination must still be made as to the weight to be given to Mr. Ashing's opinions. His background and experience as an expert witness are in the reconstruction of traffic accidents, not in predicting or assessing how people fall or react in various situations. His computations based on the pace at which people walk have little apparent application to what happens when climbing steps or in a trip and fall situation.

---

*accident, at least as they relate to the determinative issue here. The court does not view Ms. Adams as attempting to fabricate any answer at any time and defendant does not suggest the contrary.*

*[2] <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993).*

*[3] The potential objections to Mr. Ashing's testimony were not wholly, or even mostly, dependent on information received by plaintiff immediately before trial. There was ample basis for challenging Mr. Ashing's testimony from his report, hence the motion to exclude was untimely.*

3

Further, the computer program he used for his calculations was not designed to assess slip and fall or trip and fall situations. Given Mr. Ashing's lack of qualifications in this area and the lack of reliability of his analytic methods, the court concludes no weight should be given to his testimony.

Assessing the remaining evidence, and while the question is extraordinarily close, the court concludes plaintiff has established by a preponderance of the evidence that plaintiff tripped, at least in part,[4] on the second step. In reaching this conclusion, the court considered the evidence that plaintiff was facing forward when she fell,[5] suggesting (though not conclusively) that she was moving toward, rather than away from, the post office. The evidence that her feet, after the accident, extended below the third step suggests (though not conclusively) that it was not the third step that she tripped on.[6] And, the fact that the second step had the exposed rebar/defect makes it somewhat more likely that a person would trip on it rather than on a non-defective step. Finally, the explanation offered by plaintiff's counsel as to what happened — that plaintiff tripped on the second step and, while attempting to recover her balance, stepped in such a way that she ended up some 6–7 feet away — seems

---

[4]*She may well have tripped initially on the curb, but then caught her foot on the second step as she fell forward.*

[5]*One of plaintiff's doctors, Glenn Stow, M.D., testified that her injuries were consistent with a "forward fall." Stow Dep. 48, Dec. 10, 2009 (admitted into evidence).*

[6]*It strikes the court as marginally more likely that, if she tripped on the third step while moving toward the post office, she would have ended up wholly above the third step.*

plausible.⁷ Considering how a person tends to attempt to recover after tripping, it would not be necessary to have been "running" (as defendant's expert suggested) to end up 6–7 feet away.

Against this underlying factual determination, the question becomes whether defendant owed any duty to plaintiff under the circumstances. Under Oklahoma law, a landowner has a duty to a business invitee to keep the landowner's premises reasonably safe "from hidden dangers, traps, snares, and the like." Brown v. Nicholson, 935 P.2d 319, 322 (Okla. 1977), but has no duty to protect such invitees from dangers that are open and obvious and which could have been discovered in the exercise of ordinary care. McKinney v. Harrington, 855 P.2d 602, 604 (Okla. 1993). It was undisputed that plaintiff was a business invitee in the present circumstances.

Defendant argued that it owed no duty to plaintiff because it was not the landowner of the portion of the area in which she tripped. According to the postmaster's testimony, the post office building is in leased space and the lease does not include all of the "sidewalk" portion in front of it. According to her, the second step was on property retained by the landlord from whom the post office building was leased.⁸ It strikes the court as odd that a private lessor would lease a commercial building while retaining a non-leased strip around the outside of it. The present circumstances do not involve multiple tenants where some sort

---

⁷*The fact that plaintiff had physical limitations impacting her mobility makes this conclusion, like others in this case, extraordinarily close.*

⁸*A copy of the lease was not submitted in evidence. Also, there was no evidence that any portion of the sidewalk was municipal property.*

of reserved "common area" might make sense. However, the court concludes the lease arrangement is not ultimately determinative here. The evidence established that the postal authorities were aware of the problem with the second step, that they cleared that portion of the sidewalk in snowy weather and kept it swept, and that, for persons entering the front of the post office, walking across this "strip" of ground was the only way to get there. In these circumstances — where defendant has routinely exercised actual control over the concerned property — the court concludes defendant must be considered a "landowner" within the meaning of Oklahoma's premises liability framework.

As noted above, a landowner does not have a duty to protect business invitees from dangers which are open and obvious. However, Oklahoma law recognizes that, in determining what is open and obvious, "the characteristics of an item as being observable . . . cannot, by itself, require that item to be declared as a matter of law an open and obvious danger." Zagal Truckstops Corp. of Am., 948 P.2d 273, 275 (Okla. 1997). Instead, the trier of fact must examine "all of the circumstances . . . to determine whether a particular condition is open and obvious to the plaintiff." *Id.* For example, in Roper v. Mercy Health Center, 903 P.2d 314, 315 (Okla. 1995), the Oklahoma Supreme Court, reversing the grant of summary judgment for the defendant, concluded that a small light fixture installed in the sidewalk was not necessarily open and obvious where it was alleged to be obscured from the plaintiff's view by pedestrian traffic. Here, the court concludes the evidence — particularly the proximity of the second step to the curb and the position of plaintiff's car relative to both — establishes that the exposed rebar on the second step was not open and obvious to

plaintiff.

In sum, the court concludes the evidence was sufficient — barely — to establish the necessary elements for defendant's liability for plaintiff's fall.

The court next turns to what damages are recoverable by plaintiff. In closing arguments, plaintiff stated two potential measures of her damages: (1) compensation for the total elbow replacement, which would theoretically restore the function of plaintiff's elbow and alleviate her pain, or (2) compensation for the loss of use of her elbow and the associated pain and suffering. Under either theory, plaintiff seeks to recover damages in excess of her originally claimed $20,000.

Though the court granted the plaintiff's motion to increase her claimed amount in light of her newly discovered need for total elbow replacement, that order does not relieve plaintiff of the burden of establishing her damages to a reasonable certainty. MBA Commercial Const., Inc. v. Roy J. Hannaford Co., 818 P.2d 469, 474 (Okla. 1991). The evidence at trial did not establish to a reasonable certainty that plaintiff should or could undergo a total elbow replacement. Plaintiff's orthopedist, Dr. Robert Gunderson, testified that the complicated nature and severity of plaintiff's injury, in addition to her other health problems, made her candidacy for elbow replacement uncertain. He further testified that plaintiff should only have total elbow replacement if she can stabilize her diabetes and reverse its effects,[9] as well as get accepted by one of the very few orthopedic surgeons qualified to undertake her

---

[9]*Plaintiff's medical history suggested this result to be unlikely.*

7

surgery. Dr. Gunderson indicated that it was "less likely than more likely" that she would be accepted by such a qualified surgeon. In light of Dr. Gunderson's testimony and the related evidence, the court concludes that plaintiff has failed to prove that total elbow replacement should be the measure of her damages under the applicable standard.

As noted above, the basis for the court's grant under 28 U.S.C. § 2675(b) of plaintiff's request to increase the amount of her claim was that she could show a need for total elbow replacement surgery based on new information not originally available to her. As plaintiff's proof ultimately failed as to that showing — that she needs the replacement surgery, qualifying it as the "reasonably certain" basis for her damages — she is left with the circumstances that existed as of the time she filed her administrative claim in June 2008. Plaintiff's testimony at trial was that the pain she presently suffers and her limited use of her right arm are substantially the same as she experienced in September 2007. The August 2007 report of Dr. Gunderson, indicating there was nothing further he could do and that she would have to live with the existing condition, is further indication that plaintiff was on notice of all the conditions — short of total elbow replacement — that might impact the amount of her claim by the time she actually filed it. In these circumstances, there is no basis for exceeding the $20,000 originally sought in the administrative claim.

The evidence readily establishes that, at the time plaintiff submitted her original claim, she had suffered damages of at least $20,000 as a result of the lost use of her right arm and associated pain and suffering.

Accordingly, the court finds against defendant and in favor of plaintiff, and awards

damages in the amount of $20,000.00. Judgment will be issued consistent with this conclusion.

**IT IS SO ORDERED**.

Dated this 29th day of April, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE